IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ELROY GUTIERREZ, *Appellant.*

No. 1 CA-CR 15-0342
FILED 9-1-2016

Appeal from the Superior Court in Yavapai County
No. P1300CR201400675
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

White Law Offices, PLLC, Flagstaff
By Wendy F. White
*Counsel for Appellant*

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Patricia A. Orozco and Judge Donn Kessler joined.

**J O H N S E N**, Judge:

¶1          We address in this appeal two statutory interpretation issues: Whether use or possession of multiple deadly weapons during the commission of a drug felony constitutes just one offense under Arizona Revised Statutes ("A.R.S.") section 13-3102(A)(8) (2016), and whether a defendant convicted of transportation of methamphetamine for sale under A.R.S. § 13-3407(A)(7) (2016) is eligible for early release.[1]  We also consider whether the superior court judge who participated in a settlement conference violated the defendant's due-process rights by imposing a greater sentence after the defendant was convicted than she had promised him during the settlement conference.

## FACTS AND PROCEDURAL BACKGROUND

¶2          A highway patrol officer parked in the median of Interstate 17 north of Cordes Junction one summer afternoon saw Elroy Gutierrez drive by with his windows rolled down and noticed Gutierrez slowed below the speed limit as he passed.[2]  The officer pulled out to follow Gutierrez, and stopped him after he saw Gutierrez twice apply the brakes for no apparent reason and the car's right tires twice swerve across the white fog line.  After Gutierrez and his passenger gave inconsistent statements, the officer requested a drug canine unit.  The dog alerted, and a search of the car revealed two handguns, just under a half-pound of heroin, more than four pounds of methamphetamine and a black zippered case containing a small quantity of heroin and a used syringe.  Interviewed following his arrest, Gutierrez admitted he used heroin earlier in the day and voluntarily provided a urine sample.  A drug test revealed metabolites of heroin, methamphetamine and marijuana.

¶3          Gutierrez was indicted on one count of transportation of a dangerous drug for sale (methamphetamine), a Class 2 felony; one count of transportation of a narcotic drug for sale, a Class 2 felony; two counts of misconduct involving weapons, each a Class 4 felony; two counts of possession of drug paraphernalia, each a Class 6 felony; and two counts of aggravated driving under the influence, each a Class 4 felony.  His

---

[1]      Absent material revision after the date of an alleged offense, we cite a statute's current version.

[2]      We view the evidence in the light most favorable to sustaining the jury's verdicts.  *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

passenger also was indicted on the drug and weapons charges. After a joint trial, the jury acquitted Gutierrez of one count of aggravated driving under the influence and transportation of a narcotic drug for sale but found him guilty of the other DUI charge, as well as transportation of a dangerous drug for sale, possession of a narcotic drug, possession of drug paraphernalia and misconduct involving weapons. The jury also found the co-defendant guilty of all charges and found presence of an accomplice and commission of the offense for pecuniary gain as aggravating factors. The superior court sentenced Gutierrez to concurrent aggravated prison terms, the longest of which was 14 years.

¶4        Gutierrez timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (2016), 13-4031 (2016), and -4033(A)(1) (2016).

## DISCUSSION

### A.    Denial of Motion to Suppress.

¶5        Gutierrez contends the superior court erred by denying his motion to suppress the drugs and guns found in the car because the officer did not have reasonable suspicion for the traffic stop. At the suppression hearing, the officer testified he stopped the car because of concern the driver was impaired or sleepy. Based on the officer's testimony, given the officer's concern that the driver was impaired, the superior court found the officer had reasonable suspicion of a traffic violation.

¶6        We will not reverse the denial of a motion to suppress absent a clear abuse of discretion. *State v. Guillory*, 199 Ariz. 462, 465, ¶ 9 (App. 2001). "In reviewing the denial of a motion to suppress evidence, we consider only the evidence presented at the suppression hearing, and view that evidence in the light most favorable to upholding the trial court's ruling." *State v. Evans*, 235 Ariz. 314, 315, ¶ 2 (App. 2014) (quoting *State v. Olm*, 223 Ariz. 429, 430, ¶ 2 (App. 2010)). We defer to the superior court's factual determinations, including its evaluation of the credibility of the witnesses, but review its conclusions of law *de novo*. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996).

¶7        The Fourth Amendment forbids "unreasonable searches and seizures." U.S. Const. amend. IV. A law enforcement stop of a vehicle constitutes a seizure under the Fourth Amendment and "must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." *State v. Richcreek*, 187 Ariz. 501, 503–04 (1997) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "Although

an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citation omitted). "In reviewing a claim that law enforcement officers lacked the reasonable suspicion required for an investigatory stop, we apply a peculiar sort of *de novo* review, slightly more circumscribed than usual, because we defer to the inferences drawn by the [trial] court and the officers on the scene, not just the [trial] court's factual findings." *Evans*, 235 Ariz. at 317, ¶ 8 (alterations in original) (citation and internal quotation marks omitted); *see also State v. Teagle*, 217 Ariz. 17, 24, ¶ 26 (App. 2007) ("In reviewing the totality of the circumstances, we accord deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious actions.").

**¶8** Here, the superior court did not abuse its discretion; the unnecessary braking and the weaving out of the traffic lane constituted a sufficient objective basis on which the officer could conclude the driver might be impaired. *See United States v. Brignoni-Ponce*, 422 US. 973, 885 (1975) (erratic driving can support reasonable suspicion for stop). Gutierrez argues the officer's reason for stopping his car was a pretext, but as long as a stop is not a product of prohibited racial profiling (Gutierrez does not argue he was illegally profiled), the stop does not violate the Fourth Amendment simply because an officer's "ulterior motives" may include objectives other than traffic enforcement. *Whren v. United States*, 517 U.S. 806, 811–13 (1996); *see also Jones v. Sterling*, 210 Ariz. 308, 311, ¶ 11 (2005) ("[E]vidence seized as a result of a traffic stop meeting 'normal' Fourth Amendment standards is not rendered inadmissible because of the subjective motivations of the police who made the stop.").

**¶9** Gutierrez cites *State v. Livingston*, 206 Ariz. 145, 147-48, ¶¶ 6, 10 (App. 2003), in which an officer stopped a driver for violating A.R.S. § 28–729(1) (2016). In relevant part, that statute requires a motorist to "drive a vehicle as nearly as practicable entirely within a single lane." After the officer testified he stopped the car because the defendant's right tires once crossed the shoulder line, the superior court suppressed the evidence seized from the car. We affirmed, concluding the statute did not penalize "brief, momentary, and minor deviations outside the marked lines." *Id.* at 148, ¶ 10.

**¶10** The officer in this case did not stop Gutierrez for violating A.R.S. § 28–729(1), or for swerving over the fog line just once. The stop was based on the totality of the driver's conduct, which, the superior court found, demonstrated a reasonable likelihood that the driver might be

impaired. In light of the officer's testimony, the superior court did not abuse its discretion in ruling the driver's conduct established reasonable suspicion to support the stop.

## B.      Denial of Motion to Sever.

¶11      Gutierrez contends the superior court erred in denying his motion to sever his trial from that of his co-defendant. Defendants may be joined for trial "when each defendant is charged with each offense included, or when the several offenses are part of a common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others." Ariz. R. Crim. P. 13.3(b). Despite the possibility of confusion from joinder, joint trials are favored in the interest of judicial economy. *See State v. Murray*, 184 Ariz. 9, 25 (1995). The court, however, must grant a motion to sever trial of two or more defendants when "necessary to promote a fair determination of the guilt or innocence of any defendant of any offense[.]" Ariz. R. Crim. P. 13.4(a). Thus, the court should grant severance when it detects features of the case that might prejudice the defendant, such as "when . . . evidence admitted against one defendant has a harmful rub-off effect on the other defendant . . . or . . . co-defendants present antagonistic, mutually exclusive defenses or a defense that is harmful to the co-defendant." *Murray*, 184 Ariz. at 25.

¶12      We review the denial of a motion to sever trial of a co-defendant for an abuse of discretion. *State v. Blackman*, 201 Ariz. 527, 537, ¶ 39 (App. 2002). To establish an abuse of discretion, a defendant must show that at the time he moved to sever, he had proved his defense would be prejudiced absent severance. *Murray*, 184 Ariz. at 25 (Defendant "must demonstrate compelling prejudice against which the trial court was unable to protect.") (quoting *State v. Cruz*, 137 Ariz. 541, 544 (1983)). A defendant who files an unsuccessful pretrial motion to sever must renew the motion "during trial at or before the close of the evidence[,]" and "[s]everance is waived if a proper motion is not timely made and renewed." Ariz. R. Crim. P. 13.4(c); *State v. Laird*, 186 Ariz. 203, 206 (1996); *see also State v. Flythe*, 219 Ariz. 117, 120, ¶ 9 (App. 2008) (Waiver provision of Rule 13.4(c) "prevents a defendant from strategically refraining from renewing his motion, allowing a joint trial to proceed, then, if he is dissatisfied with the final outcome, arguing on appeal that severance was necessary."). Because Gutierrez failed to renew his pretrial motion to sever, we review the issue only for fundamental error.

¶13      Gutierrez argues the superior court should have severed the trial because he and his co-defendant had inherently antagonistic defenses.

"[A] defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive." *Cruz*, 137 Ariz. at 545. But as our supreme court has explained:

> It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed.

*Id*. at 544-45.

**¶14** Gutierrez and his co-defendant each professed he did not possess the drugs and guns, but that they belonged to the other. The jury, however, did not need to decide that only one of the defendants possessed the drugs and guns; it logically could have attributed any combination of guilt or innocence between the two defendants. For that reason, Gutierrez and his co-defendant's defenses were not mutually exclusive. *See State v. Turner*, 141 Ariz. 470, 473 (1984) (defenses not mutually exclusive when jury could have found core of both defenses true); *see also Cruz*, 137 Ariz. at 545.

**¶15** Moreover, in reviewing the denial of a motion to sever, "we are mindful that the trial court exercises considerable discretion in determining whether, *in light of the evidence then before the court*, the defendant has made the requisite showing of prejudice." *State v. VanWinkle*, 186 Ariz. 336, 339 (1996) (emphasis added). Because Gutierrez did not renew his motion to sever, the court had no basis to conclude the defenses were mutually exclusive.

**¶16** By the same token, Gutierrez's argument also fails because he cannot establish prejudice. *See Murray*, 184 Ariz. at 25. On appeal, Gutierrez argues for the first time that the court's failure to sever the trial compelled him to testify although he might not have done so had he been tried separately. At trial, Gutierrez acknowledged that the pouch with the personal supply of heroin was his, but testified he knew nothing about the other drugs in the car and that the guns belonged to his co-defendant.

**¶17** The superior court instructed the jurors to consider the charges against each defendant separately and that "[e]ach defendant is entitled to have the jury determine the verdict as to each of the crimes

charged based upon that defendant's own conduct and from the evidence which applies to that defendant, as if that defendant were being tried alone." So instructed, the jury acquitted Gutierrez of some of the charges against him. On this record, no fundamental error occurred in the denial of the motion to sever. *See State v. Goudeau*, 239 Ariz. 421, __, ¶ 67 (2016).

## C. Unit of Prosecution for Misconduct Involving Weapons.

**¶18** Gutierrez was convicted of two counts of misconduct involving weapons in violation of A.R.S. § 13-3102(A)(8) (2016) based on the two handguns found in the vehicle. The statute provides, in pertinent part, that a person commits misconduct involving weapons by knowingly "[u]sing or possessing a deadly weapon during the commission of any felony offense included in chapter 34 of [the criminal code]." A.R.S. § 13-3102(A)(8).

**¶19** Gutierrez argues the two convictions violate double jeopardy principles because § 13-3102(A)(8) constitutes a single offense regardless of the number of weapons used or possessed during the commission of a drug crime. *See Taylor v. Sherrill*, 169 Ariz. 335, 338 (1991) (double jeopardy prevents imposition of multiple punishments for same offense). We review a double jeopardy claim *de novo*. *State v. Moody*, 208 Ariz. 424, 437, ¶ 18 (2004). Statutory interpretation is a question of law that likewise is subject to *de novo* review. *State v. Hasson*, 217 Ariz. 559, 561, ¶ 8 (App. 2008). Because Gutierrez did not raise this objection in the superior court, our review is limited to fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). A double jeopardy violation, however, constitutes fundamental error. *State v. Millanes*, 180 Ariz. 418, 421 (App. 1994).

**¶20** The issue is the allowable unit of prosecution under § 13-3102(A)(8), or, put differently, the "scope of conduct for which a discrete charge can be brought" under the statute. *See State v. Jurden*, 239 Ariz. 526, ___ ¶ 11 (2016). We begin with the language of the statute, keeping in mind that our objective "is to give effect to the legislature's intent." *Id.*, ¶ 15. "If the statutory language is unambiguous, we apply it as written without further analysis." *Id.* Unless it is clear the legislature intended otherwise, we will not "construe the words of a statute to mean something other than what they plainly state." *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co., Inc.*, 177 Ariz. 526, 529 (1994).

**¶21** Citing federal decisions interpreting 18 U.S.C. § 922, which prohibits certain persons from importing, manufacturing, transporting or receiving firearms in interstate or foreign commence, Gutierrez argues

A.R.S. § 13-3102(A)(8) establishes a single offense regardless of the number of weapons a defendant possesses or uses in committing the predicate crime. *See United States v. Szalkiewicz*, 944 F.2d 653 (9th Cir. 1991); *United States v. Valentine*, 706 F.2d 282 (10th Cir. 1983). Gutierrez argues that courts construing 18 U.S.C. § 922 have found that provision to be ambiguous as to the unit of prosecution, and that A.R.S. § 13-3102(A)(8) is likewise ambiguous.

¶22    The ambiguity in the federal statute stems from use of the phrase "any firearm" in the law's definition of the object of the offense. *Valentine*, 706 F.2d at 292-93; *see also United States v. Kinsley*, 518 F.2d 665, 668 (8th Cir. 1975) ("the word 'any' has typically been found ambiguous in connection with the allowable unit of prosecution"). Because the federal statute is unclear as to the unit of prosecution Congress intended for the offense, the federal courts have applied the rule of lenity in holding that only one offense occurs for a singular act regardless of the number of weapons involved. *See, e.g., Valentine*, 706 F.2d at 293-94; *Kinsley*, 518 F.2d at 670.

¶23    But the ambiguity present in the federal statute is not present in the Arizona provision. Unlike the federal statute's use of the phrase "any firearm," A.R.S. § 13-3102(A)(8) is written in the explicit singular, using the phrase "*a* deadly weapon" (not "*any* deadly weapon"). The distinction between use of the article "a" and "any" in determining the unit of prosecution is well recognized by the courts in other jurisdictions, including the federal courts. *See, e.g., United States v. Alverson*, 666 F.2d 341, 347 (9th Cir. 1982) (phrase "to receive or possess a firearm" expresses legislative intent to allow separate prosecution for each firearm); *Sanders v. United States*, 441 F.2d 412, 414–15 (10th Cir. 1971) (each firearm is a separate offense under statute that makes it unlawful for any person to receive or possess "a firearm which is not registered to him"); *Grappin v. State*, 450 So.2d 480, 482 (Fla. 1984) (article "a" in reference to "firearm" in statute clearly shows legislature intended to make each firearm a separate unit of prosecution); *Taylor v. State*, 929 N.E.2d 912, 921 (Ind. App. 2010) ("In giving the words 'a' and 'firearm' their plain and ordinary meaning, we conclude that the legislature's intent was to make each unlawful possession of one firearm by a serious violent felon a separate and independent crime."); *State v. Kidd*, 562 N.W.2d 764, 766 (Iowa 1997) (decision upholding multiple prosecutions "is in accord with the majority of courts which have determined the appropriate unit of prosecution under statutes using the same language"); *State v. Lindsey*, 583 So.2d 1200, 1204 (La. App. 1991) (statute prohibiting possession of "a firearm" authorized separate prosecutions for each weapon possessed). *But see People v. Haggart*, 370

N.W.2d 345, 354 (Mich. App. 1985) (statute prohibiting possession of "a firearm" during commission of felony allows only single prosecution, regardless of number of weapons possessed).

¶24         Beyond the cases interpreting 18 U.S.C. § 922, Gutierrez offers no other support for his contention that the unit of prosecution under A.R.S. § 13-3102(A)(8) sweeps together into a single offense the use or possession of any number of deadly weapons while committing a drug felony. To the extent the Arizona statute is ambiguous, we agree with the State that the purpose of the provision – to specially criminalize a drug crime that is more dangerous because it involves a deadly weapon – is served by allowing multiple charges to be brought when a defendant commits a drug felony while using or possessing multiple deadly weapons. Each weapon a defendant uses or possesses renders the predicate offense incrementally more dangerous.

¶25         For these reasons, we conclude the allowable unit of prosecution for a violation of A.R.S. § 13-3102(A)(8) is each deadly weapon used or possessed during the commission of a felony drug offense. Accordingly, no double jeopardy violation occurred when Gutierrez was convicted and sentenced on two counts of misconduct involving weapons.

**D.         Alleged Judicial Vindictiveness in Sentencing.**

¶26         Gutierrez argues the superior court judge violated his due-process rights by imposing a longer sentence after the jury convicted him than she had said she would give him if he accepted a plea offer before trial.[3] Gutierrez argues judicial vindictiveness is presumed when, as here, a judge promises to impose a particular sentence in connection with a prosecution's plea offer, then imposes a harsher sentence after the defendant declines the plea and is convicted after trial.

¶27         During a settlement conference held just before the hearing on the motion to suppress evidence from the traffic stop in this case, the State offered to dismiss the other charges and recommend a sentence of no more than 10 years if Gutierrez would plead guilty to transportation of methamphetamine for sale and aggravated DUI. *See* A.R.S. § 13-3407(E) (2016) (presumptive sentence for first-time offense of transportation of dangerous drug for sale is 10 years). Speaking directly to Gutierrez in the presence of counsel, the trial judge initially observed that an appropriate

---

[3]         Because Gutierrez did not raise this contention in the superior court, we review only for fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19.

sentence for the two charges in the plea offer would be no more than eight and a half years. The judge said, "Certainly I would think, under the plea, that a mitigated term would be appropriate. Again, how mitigated, I'm not sure . . . . But I could probably see a cap, based on purposes [sic] of the plea negotiations, of no more than eight and a half. I could go less than that; I'm just trying to give myself a little bit of a range under this plea."

¶28 After a break to allow Gutierrez to confer with counsel, the judge returned to the bench and said that after giving it more thought, a shorter sentence would be appropriate under the proposed plea. She acknowledged that Gutierrez might defend the drug charge by arguing he knew nothing about the methamphetamine in the car, but pointed out that defense would still leave the aggravated DUI charge (based on Gutierrez's admitted use of heroin the morning of the traffic stop). The judge told Gutierrez the maximum term on the aggravated DUI charge, by itself, would be 7.5 years.[4] The court continued, "So it seems appropriate to me that [under the plea] I should make it a maximum of 7.5 rather than the 8.5 I told you. Again, I don't know if that makes any difference to you, but I want to let you know that I would – if you were interested in the plea, I would maximize my sentence at 7.5, which is the maximum that you could get after trial if you were just convicted of the aggravated DUI and not the drug charges, so for what it's worth. . . . [I]f you take the plea, I wouldn't impose more than 7.5, which is the maximum you could get at trial, even if you won on all the drug charges."

¶29 Ultimately, Gutierrez declined to accept the plea, and the jury convicted him of seven charges. The court imposed a term of 14 years' incarceration on the charge of transportation of methamphetamine for sale; each of the other sentences the court imposed were for shorter terms, and

---

[4] The sentence the court described was the maximum that could be imposed on a category-two offender, upon proof of two or more aggravating factors. (Before the settlement conference, the State had alleged Gutierrez had three prior felony convictions, each for an offense committed in New Mexico. There was no discussion during the conference about whether any of the three prior felonies constituted an historical prior felony conviction pursuant to A.R.S. § 13-105(22)(a)-(c) (2016). During the settlement conference, the judge apparently presumed (without objection from any of the parties) that the third prior felony, if proved, would constitute an historical prior felony pursuant to § 13-105(22)(d) ("[a]ny felony conviction that is a third or more prior felony conviction").)

all were ordered to run concurrently. (The court imposed a term of seven years on the aggravated DUI conviction).

¶30            Contrary to Gutierrez's argument, there is no automatic presumption of unconstitutional vindictiveness whenever a judge imposes a greater sentence after trial than the judge offered during pretrial plea negotiations. The Supreme Court has held that a presumption of unconstitutional vindictiveness applies only when "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (citation omitted). As the Court recognized in *Smith*, "in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged," and, in addition, "[t]he defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation." *Id.* at 801. Lastly, "the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id.* For all those reasons, the mere imposition of a greater sentence after trial than offered in exchange for a pretrial plea "is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." *Id.* *See German v. United States*, 525 A.2d 596, 603 (D.C. App. 1987) (after defendant rejects a plea, the "mere fact of a sentence increase does not show vindictiveness"); *Wilson v. State*, 845 So. 2d 142, 150 (Fla. 2003) (declining to "adopt a presumption of vindictiveness that arises whenever the trial judge participates in the plea negotiations and the defendant subsequently receives a harsher sentence after a trial or hearing"); *State v. Davis*, 584 A.2d 1146, 1147 (Vt. 1990) ("presumption of vindictiveness does not arise when the sentencing judge has participated in plea bargain discussions that did not lead to an agreement" and then imposes a harsher sentence at the conclusion of the trial).

¶31            Gutierrez also argues that, even absent presumed vindictiveness, his due-process rights were violated because the judge imposed a longer sentence than she had offered during the settlement conference. The record, however, contains no support for Gutierrez's contention. The judge made no inappropriately passionate statements, either during the settlement conference or at sentencing, that might evidence vindictiveness. *Cf. Stephney v. State*, 564 So. 2d 1246, 1247-48 (Fla. App. 1990) (citing as evidence of vindictiveness a judge's comments that "[t]he next time he will know to take [the offer] when I offer it at arraignment" and "I will, as a gesture of goodwill leave [the offer] open right now before you have to decide if your client is testifying, for about fifteen seconds"); *Wilson*, 845 So. 2d at 153-57 (listing evidence of vindictiveness in other cases).

¶32        Although the State had alleged aggravating factors before the settlement conference, it had not yet proven them and in fact, the State took the position that it would recommend sentences of no longer than the presumptive if Gutierrez would accept the plea offer.  After convicting Gutierrez of each of the seven charges, however, the jury found two aggravating factors, presence of an accomplice and that the crimes were committed for pecuniary gain.  *See* A.R.S. § 13–701(D)(4), (6) (2016).  The aggravating factors allowed the judge to impose a term of 14 years on the charge of transportation of methamphetamine for sale.  A.R.S. § 13-3407(E) (range of five to 15 calendar years for first-time offense).  *Cf. Smith*, 490 U.S. at 801 ("relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial").[5]

¶33        Under these circumstances, the record does not support Gutierrez's contention that the judge acted with actual vindictiveness in imposing the sentences.  *Smith*, 490 U.S. at 799.   Gutierrez has failed to demonstrate error, much less fundamental error, in the imposition of a sentence greater than promised as part of the plea offer.

¶34        Although no legal error occurred in this case, the better practice is that, resources allowing, the judge who presides over a criminal settlement conference be someone other than the judicial officer who will preside over the trial if a settlement is not reached.  Due-process issues such as those Gutierrez argues are avoided altogether when another judicial officer presides over the settlement conference.  *Cf.* Arizona Rule of Criminal Procedure 17.4(a) (absent consent of both parties, settlement conference "discussions shall be before another judge or a settlement division.").  Moreover, when circumstances do not allow the participation of another judicial officer in the settlement conference, a trial judge participating in a settlement conference should avoid making promises about sentencing or using language that the defendant is likely to understand to be a promise.

---

[5]        At the settlement conference, the judge had told Gutierrez of the presumptive sentences on the other charges for an offender with a single historical prior felony conviction.  After Gutierrez admitted three prior felony convictions during trial, the judge sentenced him as a category three offender (two historical prior felonies) on each of the convictions other than the methamphetamine charge.  At sentencing, Gutierrez did not dispute that he was subject to sentencing as a category three offender and, in any event, the 14-year sentence the court imposed on the methamphetamine charge was the longest of the concurrent sentences the court imposed.

### E.    Imposition of Flat-Time Sentence.

**¶35**    The court ordered that Gutierrez was not eligible for early release on the 14-year sentence it imposed on his conviction for transportation of methamphetamine for sale; rather, it ordered that sentence must be "flat time."  Relying on language in A.R.S. § 13-3407(F), Gutierrez argues the court erroneously did not believe it had discretion to give him the benefit of early release.

**¶36**    As noted, Gutierrez was convicted of transportation of methamphetamine for sale under A.R.S. § 13-3407(A)(7).  Subpart (F) of § 13-3407 provides that a person convicted of violating § 13–3407(A)(7) for transporting methamphetamine for sale "is not eligible for suspension of sentence, probation, pardon or release from confinement on any basis until the person has served the sentence imposed by the court, the person is eligible for release pursuant to § 41–1604.07 or the sentence is commuted."  Gutierrez argues that the reference to release credits in this statute - "the person is eligible for release pursuant to § 41–1604.07" - grants the superior court authority to sentence a defendant to flat time *or* early release if deemed eligible by the Department of Corrections pursuant to A.R.S. § 41-1604.07 (2016).  In other words, Gutierrez asserts a flat-time sentence is not mandatory.

**¶37**    In *Hasson*, 217 Ariz. at 562, ¶ 13, we characterized the language in § 13–3407(F) as "somewhat perplexing," given that § 13–3407(E) requires the imposition of a calendar-year or flat-time prison term. We resolved any ambiguity, however, by looking to the legislature's intent of imposing calendar-year sentences for certain methamphetamine-related offenses.  *Hasson*, 217 Ariz. at 562-63, ¶¶ 12, 17.  We concluded that § 13–3407(F) "does not provide for release credits because § 41–1604.07(A) specifically excludes eligibility for anyone 'sentenced to serve the full term of imprisonment imposed by the court.'"  *Hasson*, 217 Ariz. at 563, ¶ 16.

**¶38**    The same analysis applies here.  Section 13-3407(E) provides that a person convicted of transportation of methamphetamine for sale "shall" be sentenced to a prison term between five and 15 "calendar years."  The phrase "calendar year" is defined as "three hundred sixty-five days' actual time served without release, suspension or commutation of sentence, probation, pardon or parole, work furlough or release from confinement on any other basis."  A.R.S. § 13-105(4) (2016).  Although we continue to view the language in § 13–3407(F) as "somewhat perplexing," because the superior court was required to sentence Gutierrez to a calendar-year prison term, defined as without release, the court had no discretion to make

Gutierrez eligible for early release.  Thus, the superior court did not abuse its discretion in imposing the flat-time sentence.

## CONCLUSION

**¶39**        For the foregoing reasons, we affirm Gutierrez's convictions and sentences.



Amy M. Wood • Clerk of the court
FILED:  AA