NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee,*

*v.*

ERIC ALAN STELLJES,
*Appellant.*

STATE OF ARIZONA,
*Appellee,*

*v.*

LAURA MARIE LEINAAR
*Appellant.*

No. 1 CA-CR 16-0108
1 CA-CR 16-0138
(Consolidated)
FILED 6-6-2017

Appeal from the Superior Court in Maricopa County
No.  CR2014-002393-002
CR2014-002393-001
The Honorable Roland J. Steinle, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele Ponce
*Counsel for Appellee*

Laman Law Office, PLLC, Phoenix
By Charley L. Laman
*Counsel for Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.[1]

---

**J O H N S E N**, Judge:

**¶1**          Eric Alan Stelljes and Laura Marie Leinaar appeal their convictions and sentences for conspiracy, illegal conduct of an enterprise, promotion of gambling, and money laundering. They contend insufficient evidence supports their convictions, and Leinaar also argues the superior court erred in denying her motions to sever her trial and for a bench trial. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**          The charges against Stelljes and Leinaar all stemmed from operation of the ESC Lounge, a Flagstaff business that purported to sell computer time, internet access, and copying and fax services.[2] Customers also could buy cards that allowed them to play "casino-style" computer games and win cash prizes. Each card allowed a customer to choose among a variety of "casino-style" games such as Keno or slots. After swiping the card, the customer could choose the number of credits or entries to play with each round, and then could click a button to reveal whether he or she

---

[1]      The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]      We view the evidence in the light most favorable to sustaining the verdicts. *State v. Arredondo*, 155 Ariz. 314, 316 (1987).

had won. Winnings could be redeemed for cash or used to purchase more computer time and game credits.

¶3　　　　　After an undercover operation involving the Arizona Department of Gaming and Flagstaff police, authorities executed search warrants at the ESC Lounge and at the homes of Stelljes, who owned the business, and Leinaar, its manager. Officers discovered $100,000 to $200,000 worth of equipment in Stelljes's home and guest house, including laptop computers, hard drives, monitors, wireless routers, servers, printing machines and "a large inventory of internet café-type of machines." Officers found more than $11,000 in cash in Leinaar's home, along with receipts and business records from the ESC Lounge.

¶4　　　　　Stelljes and Leinaar were charged with promotion of gambling in violation of Arizona Revised Statutes ("A.R.S.") section 13-3303 (2017), illegal conduct of an enterprise in violation of A.R.S. § 13-2312 (2017) and conspiracy in violation of A.R.S. § 13-1003 (2017).[3] Stelljes also was charged with money laundering in violation of A.R.S. § 13-2317(B) (2017).

¶5　　　　　Prior to trial, Leinaar served a waiver of trial by jury, a motion to confirm a bench trial and a motion to sever her trial from that of Stelljes. The State did not agree to a bench trial, and the superior court denied Leinaar's motions. Leinaar did not renew her motion to sever during trial.

¶6　　　　　After the jury convicted Stelljes and Leinaar on all charges, the court suspended Leinaar's sentences and placed her on concurrent one-year probation terms for each conviction. The court also suspended Stelljes's sentences and placed him on concurrent two-year probation terms for each conviction. Stelljes and Leinaar each timely appealed. This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2017), 13-4031 (2017) and -4033(A)(1) (2017).

## DISCUSSION

### A.　Sufficiency of the Evidence.

¶7　　　　　A question of sufficiency of the evidence is one of law, subject to *de novo* review. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "We review the sufficiency of evidence presented at trial only to determine whether substantial evidence supports the jury's verdict." *State v. Cox*, 217 Ariz. 353,

---

3　　　　　Absent material revision after the date of an alleged offense, we cite a statute's current version.

357, ¶ 22 (2007). We will not set aside a jury verdict if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### 1. Gambling.

**¶8** Stelljes and Leinaar argue the computer games at the ESC Lounge were sweepstakes conducted as a "marketing tool," not gambling as defined in A.R.S. § 13-3301(4) (2017) and prohibited by A.R.S. § 13-3303(A).

**¶9** Under Arizona law, gambling is the "act of risking or giving something of value for the opportunity to obtain a benefit from a game or contest of chance or skill or a future contingent event." A.R.S. § 13-3301(4). A charge of promotion of gambling requires evidence the defendant knowingly conducted, organized, managed, directed, supervised or financed gambling for a benefit; or furnished advice or assistance for the conduct, organization, management, direction, supervision or financing of gambling for a benefit. A.R.S. § 13-3303(A).

**¶10** There is sufficient evidence in the record to support both convictions for promotion of gambling. Two law enforcement officers testified about their undercover visits to the ESC Lounge. The first officer testified an employee told him he needed to purchase a card to obtain a "free entry" to play a game. For $20, the officer bought a card entitling him to approximately 2,000 sweepstakes entries and 90 minutes of internet time. He "played down" most of the card, redeeming his winnings to continue to play. The second officer testified he made a $30 purchase, which allowed him 3,001 sweepstakes plays. He testified he won a total of $13.20, which he accepted as a cash payout.

**¶11** Stelljes and Leinaar argue the sweepstakes plays did not involve chance because the outcome of each play was predetermined. But whether any particular "play" loaded onto a customer's game card was predetermined to win was pure chance, from the perspective of the customer. "A game of chance is a contest wherein chance predominates over skill." *Boies v. Bartell*, 82 Ariz. 217, 221 (1957); *see also Engle v. State*, 53 Ariz. 458, 469 (1939) ("It is the character of the game and not the skill or want of skill of the individual player which determines whether the game is one of chance or skill."). At trial, a defense expert testified that sweepstakes prizes, such as those available at the ESC Lounge, "are awarded by chance, luck. Not by skill."

¶12          Stelljes and Leinaar also argue the ESC Lounge was not selling game entries, but instead was selling computer time that happened to come with game entries.   The State, however, presented sufficient evidence for the jury to conclude that customers were buying game entries, not internet time. *See City of Cleveland v. Thorne*, 987 N.E.2d 731, 735 (Ohio App. 2013) (receipt of sweepstakes points for every dollar spent to purchase internet time was gambling when customers' primary purpose was to participate in sweepstakes).  According to the record, customers with large balances of internet time on their cards continued to buy additional cards entitling them to game entries.  For example, the jury saw copies of receipts showing redemption of sweepstakes entries by customers who already had internet balances of 1,533 minutes, 22,172 minutes, 1,595 minutes, 744 minutes and 952 minutes.  Leinaar even acknowledged some customers carried balances of tens of thousands of unused minutes.

¶13          Stelljes and Leinaar further argue the ESC Lounge offered sweepstakes plays for free, thereby eliminating the requisite element of consideration. *See* A.R.S. § 13-3301(4) (gambling requires "risking or giving something of value" for the chance to win).  In *Benevolent & Protective Order of Elks v. State Department of Liquor Licenses & Control*, 239 Ariz. 121, 122, ¶¶ 1-2 (App. 2016), the court affirmed a gambling fine imposed on an organization that offered sweepstakes entries to raise money for charity. Members could purchase a card, place money on the card and run the card through a kiosk to win cash prizes. *Id.* at ¶¶ 3-5.  Members received one free play per day, and could obtain unlimited free plays by mail. *Id.* at 123, ¶¶ 7-8.  Over the course of the sweepstakes, however, only a tenth of the plays were free plays, and no mail-in requests for free plays were ever received. *Id.*  Under *Elks*, and based on evidence showing that 90 percent of the sweepstakes plays here were sold, not given away, the record was sufficient to support the determination that the sweepstakes was gambling under A.R.S. § 13-3301(4). *Elks*, 239 Ariz. at 124-25, ¶¶ 20-23; *see also Barber v. Jefferson County Racing Ass'n*, 960 So. 2d 599, 612-15 (Ala. 2006) (availability of free plays on slot machines did not negate element of consideration for gambling charge).

            2.      **Money laundering.**

¶14          Stelljes argues there was "a complete lack of . . . evidence" that he committed money laundering.  He argues he "never got anything out of" the business because it did not make much money to begin with and because the State confiscated its proceeds.

¶15 Money laundering in the second degree requires proof the defendant acquired or maintained an interest in, transacted, transferred, transported, received or concealed "the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of an offense." A.R.S. § 13-2317(B)(1). "Racketeering" is defined as any act "that is chargeable or indictable . . . and that would be punishable by imprisonment for more than one year," including gambling, "if committed for financial gain." A.R.S. § 13-2301(D)(4)(b)(vii) (2017). Contrary to Stelljes's argument, the State need not prove the defendant made money, only that the defendant had a financial objective. *See State ex rel. Horne v. Campos*, 226 Ariz. 424, 434, ¶ 41 (App. 2011).

¶16 The jury heard evidence that Leinaar held money the business took in for Stelljes, who owned the ESC Lounge, and that both Stelljes and Leinaar would come to the business to pick up its receipts. The State also offered evidence of Stelljes's business plan for the company, money it made, and communications between Stelljes and Leinaar about whether the business was making money. As noted above, the State also presented evidence Stelljes knew or should have known the ESC Lounge was a gambling operation. The evidence presented is sufficient to support the jury's conviction of Stelljes for money laundering.

## B.    Right to Bench Trial.

¶17 Leinaar appeals the superior court's denial of her motion for a bench trial; she argues she had a constitutional right to waive a jury trial in favor of a trial to the court. Whether a defendant is entitled to a bench trial is a matter of law, which we review *de novo*. *See Stoudamire v. Simon*, 213 Ariz. 296, 297, ¶ 3 (App. 2006).

¶18 Leinaar's argument that the U.S. and Arizona Constitutions guarantee her a right to a bench trial is unavailing. *Singer v. United States*, 380 U.S. 24, 34-36 (1965) (no such right in U.S. Constitution); *State v. Webb*, 19 Ariz. App. 73, 75 (1973) (no such right in Arizona Constitution). More generally, "[i]t is well established that the right to a jury trial may be waived when the accused is aware of this right and voluntarily and intelligently relinquishes it." *State v. Durham*, 111 Ariz. 19, 20 (1974). But an accused does not have the right to a trial by the court instead of a jury. *See id.* As stated in A.R.S. § 13-3983 (2017), "[a] trial by jury may be waived in criminal actions by the consent of both parties expressed in open court and entered on its minutes." *See also Phoenix City Prosecutor's Office v. Ybarra*, 218 Ariz. 232, 234, ¶ 12 (2008) (the statute "plainly requires, in all criminal cases, the consent of the prosecutor before a defendant may forgo a jury trial").

¶19          Because the State did not consent to a waiver of a jury, the superior court did not err in denying Leinaar's motion for a bench trial.

## C.      Motion to Sever.

¶20          Charges against multiple defendants may be joined for trial "when each defendant is charged with each offense included, or when the several offenses are part of a common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others."  Ariz. R. Crim. P. 13.3(b).  "Despite the possibility of confusion from joinder, joint trials are favored in the interest of judicial economy."  *State v. Gutierrez*, 240 Ariz. 460, 464, ¶ 11 (App. 2016).

¶21          Nevertheless, the superior court must grant a defendant's motion for severance when "necessary to promote a fair determination of the guilt or innocence of any defendant of any offense[s]."  Ariz. R. Crim. P. 13.4(a).  The court, therefore, should grant severance if it "detects the presence or absence of unusual features of the crime or cases that might prejudice the defendant," such as:

> when (1) evidence admitted against one defendant is facially incriminating to the other defendant, (2) evidence admitted against one defendant has a harmful rub-off effect on the other defendant, (3) there is significant disparity in the amount of evidence introduced against the defendants, or (4) co-defendants present antagonistic, mutually exclusive defenses or a defense that is harmful to the co-defendant.

*State v. Murray*, 184 Ariz. 9, 25 (1995).  "Sometimes, however, a curative jury instruction is sufficient to alleviate any risk of prejudice that might result from a joint trial."  *State v. Grannis*, 183 Ariz. 52, 58 (1995).

¶22          We review the denial of a motion to sever for an abuse of discretion.  *Murray*, 184 Ariz. at 25.  "To establish an abuse of discretion, a defendant must show that at the time [s]he moved to sever, [s]he had proved [her] defense would be prejudiced absent severance."  *Gutierrez*, 240 Ariz. at 464, ¶ 12.  The defendant is required to renew her motion to sever at trial; failure to do so results in waiver of severance.  Ariz. R. Crim. P. 13.4(c); *Gutierrez*, 240 Ariz. at 464, ¶ 12.  Because Leinaar did not renew her pretrial motion to sever, we review the court's decision for fundamental error.  *State v. Flythe*, 219 Ariz. 117, 119, ¶ 4 (App. 2008).

¶23          Leinaar asserts the "vast majority of trial time" was dedicated to presenting evidence that Stelljes set up and owned the business and the

equipment that was seized; she argues this disparity unfairly "rubbed off" on her. When a significant disparity of trial evidence exists, "severance is required only if 'the jury is unable to "compartmentalize the evidence as it relates to separate defendants."'" *Grannis*, 183 Ariz. at 59 (quoting *Singer v. United States*, 732 F.2d 631, 635 (8th Cir. 1984)). Leinaar does not explain why the jury was unable to compartmentalize the evidence as it related to her and Stelljes.

¶24         Leinaar also argues the court should have granted her motion for severance because she was a "mere employee" of the ESC Lounge, but she fails to explain how that defense is antagonistic to Stelljes's defense – or vice versa. A defendant seeking severance based on antagonistic defenses "must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive," that is, "in order to believe the core of the evidence offered on behalf of one defendant, [the jury] must disbelieve the core of the evidence offered on behalf of the co-defendant." *State v. Cruz*, 137 Ariz. 541, 545 (1983). The defenses Leinaar and Stelljes each advanced did not require severance. Stelljes's defense was that the ESC Lounge was operating a legitimate sweepstakes rather than a gambling operation, a defense on which Leinaar also relied. The jury did not need to disbelieve Leinaar was merely an employee to believe the ESC Lounge was operating a legitimate business.

¶25         For these reasons, the superior court did not commit fundamental error in denying Leinaar's motion for severance.

## CONCLUSION

¶26         For the foregoing reasons, we affirm Stelljes's and Leinaar's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA