NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

THOMAS NILES PRUITT, JR., *Appellant.*

No. 1 CA-CR 19-0373
FILED 2-20-2020

Appeal from the Superior Court in Yavapai County
No.  P1300CR201600617
The Honorable John David Napper, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Zickerman Law Office PLLC, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge David D. Weinzweig and Judge David B. Gass joined.

---

**H O W E**, Judge:

¶1        This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Thomas Pruitt, Jr. has advised this Court that he has found no arguable questions of law and asks us to search the record for fundamental error. Pruitt was convicted of possession of a dangerous drug for sale, possession of drug paraphernalia, and two counts of driving while under the influence. Pruitt has filed a supplemental brief in propria persona, which the Court has considered. After reviewing the record, we affirm Pruitt's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view the facts in the light most favorable to sustaining the judgment and resolve all reasonable inferences against Pruitt. *See State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998). In April 2016, Officer Nathaniel Camacho was monitoring traffic traveling East on the I-40 freeway in Yavapai County when he saw a car with windows tinted darker than the legal limit. Officer Camacho followed the car for a couple of miles, noticed the car weaving, and pulled the car over.

¶3        Because of Pruitt's driving, Officer Camacho asked Pruitt to perform standard field sobriety tests. During these tests, Pruitt showed multiple signs of impairment. Pruitt was then arrested on suspicion of DUI and Officer Camacho, along with another officer who arrived on scene, performed an inventory search of Pruitt's car. During the search, they found an eyeglass case with two baggies that contained a total of about 52 grams of methamphetamine. They found another baggie with 11 grams of methamphetamine in the car's rear cupholder. The officers also found a methamphetamine pipe and a small bag with less than a gram of methamphetamine in the front of the car.

¶4        Pruitt was transported to the police department where he provided a blood sample that was sent to the Department of Public Safety

("DPS") crime laboratory. The methamphetamine that was found in Pruitt's car was also sent to the crime laboratory to be tested. The DPS crime lab confirmed through the blood sample that Pruitt had methamphetamine and amphetamine in his system and confirmed that the substance found in his car was methamphetamine.

¶5  The State charged Pruitt with the sale or transportation of a dangerous drug, possession of a dangerous drug, possession of marijuana, possession of drug paraphernalia for methamphetamine, possession of drug paraphernalia for marijuana, and two counts of DUI. At trial, the State dismissed the possession of a dangerous drug, possession of marijuana, and possession of drug paraphernalia for marijuana charges.

¶6  At trial, Officer Camacho testified that a person could possess 63 grams of methamphetamine for personal use, but that he had never encountered anyone with that much methamphetamine who was just a user. The State's expert witness, Sergeant Jarrod Winfrey, testified that 63 grams was a large quantity that would be considered a four-month supply for regular methamphetamine users and a two-month supply for an extremely heavy methamphetamine user. He further testified that he does not usually see methamphetamine users carrying this quantity of methamphetamine. After a two-day jury trial, Pruitt was found guilty of possession of a dangerous drug for sale, possession of drug paraphernalia, and two counts of DUI.

¶7  The trial court conducted the sentencing hearing in compliance with Pruitt's constitutional rights and Arizona Rule of Criminal Procedure 26. The trial court considered Pruitt's remorse, family support, and lack of prior felony convictions as mitigating factors. The trial court gave little weight to Pruitt's lack of prior felony convictions because he was convicted of several misdemeanor offenses while the case was pending. Pruitt was sentenced to a mitigated term of 7 years' imprisonment for the sale or transportation of a dangerous drug, a mitigated term of 6 months' imprisonment for possession or use of drug paraphernalia, and 88 days' jail for both DUI offenses with 88 days' presentence incarceration credit.

**DISCUSSION**

¶8  We review Pruitt's convictions and sentences for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512 ¶ 12 (App. 2011). Counsel for Pruitt has advised this Court that after a diligent search of the entire record, he has found no arguable question of law.

**¶9**      Pruitt argues that his right to a speedy trial was violated and that the State was the cause of the delay. A defendant who is out-of-custody must be tried within 180 days after arraignment. Ariz. R. Crim. P. 8.2(a)(2). Delays caused by or on behalf of the defendant, as well as continuances granted under Rule 8.5 are excluded from the time computation set forth in Rule 8.2. Ariz. R. Crim. P. 8.4(a)(1) & (5). Pruitt posted bond the day after he was arraigned, giving the State 180 days to try him. *See* Ariz. R. Crim. P. 8.2(a)(2). The record shows that Pruitt moved to continue the case on several occasions and waived time when the trial was rescheduled. After reviewing the record, Pruitt was tried within the required 180 days, excluding the time he waived. Therefore, his right to a speedy trial was not violated.

**¶10**      Pruitt argues next that one of the jury members was selected as an alternate when he or she should have been included in jury deliberations. The record contains no evidence that an alternate juror was supposed to be included in jury deliberations. The record shows that jurors 8 and 9 were selected as alternates and that jurors 1, 2, 3, 4, 5, 6, 7, and 10 were the jurors who deliberated and returned the verdicts. Thus, Pruitt has not shown that any error occurred.

**¶11**      Pruitt also argues that because Officer Camacho testified that a person could possess 63 grams of methamphetamine for personal use, a jury could not find him guilty of possession of methamphetamine for sale beyond a reasonable doubt. This Court will uphold a conviction if substantial evidence exists to support the jury verdict. *State v. Payne*, 233 Ariz. 484, 507 ¶ 76 (2013). "Substantial evidence is proof, viewed in the light most favorable to sustaining the verdict, that would allow reasonable persons to find a defendant guilty beyond a reasonable doubt." *Id.*

**¶12**      Substantial evidence exists to support the jury verdict. While Officer Camacho did testify that someone could have possessed 63 grams of methamphetamine for personal use, he also testified that he had never encountered anyone with that much methamphetamine who was just a user. Sergeant Winfrey testified that 63 grams was a large quantity that would be considered a four-month supply for a regular methamphetamine user and a two-month supply for an extremely heavy methamphetamine user. He further testified that he does not usually see methamphetamine users carrying this quantity of methamphetamine. Given these facts, substantial evidence existed for which a reasonable person could find Pruitt guilty beyond a reasonable doubt for transporting methamphetamine for sale.

¶13      Pruitt also argues that he was punished for exercising his right to trial because he was sentenced to two more years than what was offered during plea negotiations. A presumption of unconstitutional vindictiveness applies when a reasonable likelihood exists that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. *State v. Gutierrez*, 240 Ariz. 460, 468 ¶ 30 (App. 2016). "[T]he mere imposition of a greater sentence after trial than offered in exchange for a pretrial plea 'is not more likely than not attributable to the vindictiveness on the part of the sentencing judge.'" *Id.* (quoting *German v. U.S.*, 525 A.2d 596, 603 (D.C. App. 1987). The record contains no support for Pruitt's argument. The trial judge was different than the settlement judge and the trial judge made no comments at sentencing that would indicate he was punishing Pruitt for exercising his right to trial. The mere fact that Pruitt's sentence was two years more than the sentence offered during plea negotiations does not rise to the level of judicial vindictiveness. Therefore, Pruitt's argument fails.

¶14      Pruitt further argues that the trial court should not have considered his misdemeanor convictions when deciding what weight to give to his mitigating evidence of lack of felony convictions. The trial court can consider the presentence report, including prior misdemeanor convictions when determining the weight to give to the mitigating evidence of lack of a felony conviction. *State v. Scott*, 177 Ariz. 131, 145 (1993). The presentence report indicated that Pruitt had 11 misdemeanor convictions, six of which were acquired after he was arrested in this case. The trial court properly referred to these misdemeanor convictions when deciding how much weight to give Pruitt's mitigation for having no prior felony convictions. Therefore, no error occurred.

¶15      Pruitt argues last that he received ineffective assistance of counsel because his case did not have his attorney's full attention and his attorney's "plate was full." This Court, however, will not address an ineffective assistance of counsel claim on direct appeal. *State v. Spreitz*, 202 Ariz. 1, 3 ¶ 9 (2002). Ineffective assistance of counsel claims should be raised in a petition for post-conviction relief. *State v. Glassel*, 233 Ariz. 353, 354 ¶ 8 (2013).

¶16      We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Pruitt at all stages of the proceedings, and the sentences

imposed were within the statutory guidelines. We decline to order briefing and affirm Pruitt's convictions and sentences.

**¶17**  Upon the filing of this decision, defense counsel shall inform Pruitt of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Pruitt shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.

## CONCLUSION

**¶18**  For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA