NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARCUS LEE BRISSETTE, *Appellant.*

No. 1 CA-CR 17-0526
FILED 12-20-2018

Appeal from the Superior Court in Maricopa County
No.  CR2015-155847-001
The Honorable Mark H. Brain, Judge
The Honorable George H. Foster, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Edward F. McGee
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Michael J. Brown and Judge James B. Morse Jr. joined.

---

**B E E N E**, Judge:

¶1        Appellant Marcus Lee Brissette appeals his conviction and sentence for possession of a dangerous drug, a class 4 felony.[1]  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On an afternoon in December 2015, Officer Pilkington was talking with Detectives Kelley and Lauritzen while the detectives were conducting a traffic stop.  The officers were in an area of Chandler known for gang activity.  During the stop, the officers noticed a male walking down the street.  This individual was wearing a red hoodie and red sneakers, which Detective Kelley identified as being the colors worn by the Eastside Chandler gang.  The individual appeared nervous and was trying to avoid looking in the officers' direction.  As he walked north, removing his hood, the officers saw that the individual was black with long hair.  The officers believed that this individual was another subject who lived in the area and who Detectives Kelley and Lauritzen had previously contacted, Ona Woods.  After completing the traffic stop, Officer Pilkington ran a record check that showed that Ona Woods had several outstanding warrants.

¶3        The three officers approached the individual, who had already been stopped and seated on the sidewalk by another officer, Sergeant Moore.  While seated, Sergeant Moore asked the individual for his name and was eventually provided with a birthdate and the name "Chris Cane."   The individual stated he had no identification on him and continued to appear very nervous.  Officer Pilkington walked to his patrol car to conduct a record check on the name and birthdate provided.

---

[1]     Brissette also pled guilty to misconduct involving weapons while being a prohibited possessor, a class 4 felony.  However, Brissette does not appeal that conviction or sentence.

¶4 While Detective Pilkington conducted the records check, Detective Kelley asked the individual if he had any weapons on him, to which the individual responded, "no." Detective Kelley then conducted a *Terry*[2] search and found a handgun in the individual's pocket. The detective removed the gun and arrested the individual for failure to inform the officers of the concealed weapon. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-3102(A)(1)(b). A search incident to arrest revealed a large bulge in the individual's other pocket that was later identified as methamphetamine. Officer Pilkington then returned from running the record check, which showed no records for "Chris Cane," a process that took a total of one minute.

¶5 Officer Pilkington transported the individual to a Gilbert holding facility, where fingerprint analysis identified him as Marcus Lee Brissette. After he was identified, Brissette admitted that he knew he should not have carried the gun and the methamphetamine, denied possessing two ounces of methamphetamine, and said he "had like an ounce maybe an ounce and a half" of methamphetamine.

¶6 The State charged Brissette with possession of dangerous drugs (methamphetamine) for sale, a class 2 felony, and misconduct involving weapons, a class 4 felony. *See* A.R.S. §§ 13-3407(A)(2), (B)(2), -3102(A)(4), (M). The court later severed the drug charge from the misconduct-involving-weapons charge, and Brissette plead guilty on the misconduct-involving-weapons charge.

¶7 Before trial on the methamphetamine possession charge, Brissette moved to suppress all evidence and statements obtained during the stop, arguing that: (1) although the initial contact was consensual, it evolved into a seizure when the officers ordered Brissette to stop walking and sit on the curb; (2) Brissette's continued seizure by police was not supported by reasonable suspicion that he committed a crime; and (3) the *Terry* search was not supported by reasonable suspicion that Brissette had committed a crime, was armed, or was dangerous. The court denied the motion.

¶8 A jury convicted Brissette of the lesser-included offense of possession of dangerous drugs, a class 4 felony. *See* A.R.S. § 13-3407(A)(1), (B)(1). The superior court sentenced Brissette to the presumptive term of 10 years, with 484 days of presentence incarceration credit, for the

---

2       *Terry v. Ohio*, 392 U.S. 1 (1968).

methamphetamine-possession count, and the presumptive term of 2.5 years, to run concurrently with the first sentence, for the misconduct-involving-weapons count. *See* A.R.S. § 13-703(J).

**¶9**        Brissette did not timely appeal but later petitioned the superior court for leave to file a delayed appeal under Arizona Rule of Criminal Procedure 32.1(f).[3] The superior court granted Brissette's petition, and Brissette timely filed a delayed notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

**¶10**        Brissette argues the superior court reached clearly erroneous conclusions of fact and reversibly erred when it denied his motion to suppress. Brissette asserts that: (1) any reasonable suspicion the officers might have had to initiate the stop dissipated once they approached him and saw he was not Ona Woods; and (2) the *Terry* search was not supported by reasonable suspicion because the officers should have recognized that he was not Woods before performing the search.[4]

## I.        Standard of Review.

**¶11**        We review the superior court's denial of a motion to suppress for an abuse of discretion. *State v. Gutierrez*, 240 Ariz. 460, 463, ¶ 6 (App. 2016). When reviewing the denial of a motion to suppress, "we consider only the evidence presented at the suppression hearing, and view that evidence in the light most favorable to upholding the trial court's ruling." *Id.* "We defer to the superior court's factual determinations, including its

---

[3]        Rule 32.1(f) provides relief if "the failure to file a . . . notice of appeal within the required time was not the defendant's fault[.]"

[4]        Brissette also argues the initial stop was not supported by reasonable suspicion of criminal activity. However, we do not address this argument because Brissette argued the initial stop was consensual in his motion to suppress. *See State v. Tison*, 129 Ariz. 526, 535 (1981) ("Issues concerning the suppression of evidence which were not raised in the trial court are waived on appeal."); *see also* Ariz. R. Crim. P. 16.1(c) ("The court may preclude any motion, defense, objection, or request not timely raised by [pretrial] motion . . . unless the basis was not then known and could not have been known through reasonable diligence, and the party raises it promptly after the basis is known.").

evaluation of the credibility of the witnesses, but review its conclusions of law de novo." *Id.* We must affirm the superior court's ruling "if legally correct for any reason and, in doing so, we may address the [S]tate's arguments to uphold the court's ruling even if those arguments otherwise could be deemed waived by the [S]tate's failure to argue them below." *State v. Boteo-Flores*, 230 Ariz. 551, 553, ¶ 7 (App. 2012).

## II. The Stop Was Not Unreasonably Prolonged.

**¶12** Brissette argues officers should have ended the stop once they "got a good look at [him]" because Detectives Lauritzen and Kelley had previously interacted with Woods and should have known he was not Woods. We disagree.

**¶13** A police officer may conduct an investigatory stop "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *State v. Evans*, 237 Ariz. 231, 234, ¶ 7 (2015). "[A]n investigatory detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Boteo-Flores*, 230 Ariz. at 108, ¶ 14. "Whether the scope of an investigatory stop is reasonable demands careful consideration of the totality of the circumstances." *Boteo-Flores*, 230 Ariz. at 108, ¶ 14 (citation omitted). There is no rigid time limit for an investigative stop—"the appropriate inquiry is whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985); *see also Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (stating a *Terry* stop's length "is determined by the seizure's 'mission,' which is to address the . . . violation that warranted the stop.").

**¶14** Sufficient evidence supports the conclusion that Brissette's continued detention was not unreasonably prolonged. The record indicates that even though Officer Pilkington had a photo of Woods and Detective Kelley had interacted with Woods before, both officers continued to believe Brissette was Woods after approaching him. Brissette was unable to provide identification to dispel this suspicion, justifying his continued detention while the officers ran a record check to confirm or dispel their suspicion that Brissette was Woods. *See Adams v. Williams*, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the

officer at the time."). Furthermore, the stop was not unreasonably long; footage from Officer Pilkington's chest camera shows that the process of running the record check took approximately one minute. No unnecessary delay occurred between asking Brissette for his identifying information and running the record check. Accordingly, the stop was not unreasonably prolonged.

### III. The *Terry* Frisk Was Not Supported by Reasonable Suspicion that Brissette Was Armed and Dangerous.

¶15 Brissette argues reasonable suspicion did not support the *Terry* frisk. We agree.

¶16 "[W]hen an encounter between a police officer and an individual is not based on consent, and an officer has a reasonable suspicion both that criminal activity is afoot and that the individual is armed, the officer may conduct a *Terry* frisk without specifically assessing the likelihood that the individual is presently dangerous." *Gastelum v. Hegyi*, 237 Ariz. 211, 214, ¶ 11 (App. 2015). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

¶17 Here, insufficient evidence supports the conclusion that reasonable suspicion supported the *Terry* frisk. Officer Kelley stated that he performed the frisk because Officer Pilkington still had not identified Brissette and because Brissette seemed nervous at the time. However, even if, as the court found, "while one officer was running the name [Brissette] provided, they still reasonably suspected he could be Woods, a gang member with warrants," the evidence presented does not support the conclusion that Brissette was armed.

¶18 Footage from Officer Pilkington's chest camera reveals that when the three officers approached Sergeant Moore and Brissette, Brissette was seated on the ground. Four officers stood around him when Officer Pilkington left to run the record check. When Officer Pilkington returned from running the record check approximately one minute later, Brissette was in handcuffs. During this minute-long period, Detective Kelly asked Brissette if he was armed and Brissette said no. Detective Kelley denied that the officers had seen Brissette's gun before the frisk, and Detective Kelley denied he had ever spoken with Woods about his gang affiliation or activity, thus dispelling the notion that the officers believed Woods, and accordingly Brissette, was a gang member. This evidence does not support

the conclusion that the officers were "warranted in the belief that [their] safety or that of others was in danger," *see Terry*, 392 U.S. at 27, therefore the *Terry* frisk was improper.

## IV. The Evidence Acquired after the *Terry* Frisk Need Not Be Suppressed.

**¶19**　　　The State asserts that regardless of the improper *Terry* frisk, the superior court was correct bydenying the motion to suppress under the inevitable discovery doctrine. *See State v. Rosberry*, 237 Ariz. 507, 508, ¶ 7 (2015) ("We will affirm a trial court's decision if it is legally correct for any reason."). We agree.

**¶20**　　　Under the inevitable discovery doctrine, "a court can admit illegally obtained physical evidence in appropriate circumstances if the [S]tate proves by a preponderance of the evidence that the disputed evidence inevitably would have been seized by lawful means." *Brown v. McClennen*, 239 Ariz. 521, 524, ¶ 13 (2016). "The preponderance of the evidence standard requires that the fact-finder determine whether a fact sought to be proved is more probable than not." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 25 (2005). The inevitable discovery doctrine applies "if the evidence would have been lawfully discovered despite the unlawful behavior and independent of it." *Brown*, 239 Ariz. at 525, ¶ 14.

**¶21**　　　The evidence should not be suppressed despite the improper *Terry* frisk. When Officer Pilkington, Detective Kelley, and Detective Lauritzen approached Brissette, Sergeant Moore was asking Brissette for his identifying information. Brissette provided a name and birthdate. Officer Pilkington then went to his patrol car to run a record check, which showed no result. Detective Kelley testified that, in his experience, the only time a record check would show no result was if the suspect was a juvenile or was lying. Thus, because Brissette provided a false name and birthdate, the officers had probable cause to arrest him. *See Utah v. Strieff*, 136 S. Ct. 2056, 2063 (2016) (holding that later discovery of arrest warrant attenuated the impact of an unlawful stop); *see also* A.R.S. § 13-2907.01(A) (criminalizing "knowingly mak[ing] to a law enforcement agency . . . a false . . . report or statement" and "knowingly misrepresent[ing] a fact for the purpose of . . . misleading a peace officer"); *see also State v. Keener*, 206 Ariz. 29, 32, ¶ 15 (App. 2003) ("Probable cause derives from reasonably trustworthy information and circumstances that would lead a person of reasonable caution to believe that a suspect has committed an offense. . . . [W]hether probable cause exists depends on all the facts and circumstances known at the time of arrest.") (citation omitted). The officers would have been

entitled to search Brissette incident to his arrest, *see State v. Lamb*, 116 Ariz. 134, 138 (1977), at which point they would have discovered the weapon and methamphetamine. Accordingly, the officers would have discovered these items even if Detective Kelley had not performed the improper *Terry* frisk. The superior court did not err by failing to suppress the weapon and the methamphetamine.

**CONCLUSION**

¶22 For the foregoing reasons, we affirm Brissette's conviction and sentence for Possession of Dangerous Drugs (Methamphetamine).

