IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

BISIMO EMEDI, *Appellant.*

No. 1 CA-CR 19-0650
FILED 03-25-2021

---

Appeal from the Superior Court in Maricopa County
No.  CR2017-137283-001
The Honorable Laura M. Reckart, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

---

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which
Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

---

**M c M U R D I E**, Judge:

**¶1**        Bisimo Emedi appeals his convictions and sentences for sexual assault, kidnapping, second-degree burglary, and failure to obey a police officer. We hold that a defendant's right under Arizona Rule of Criminal Procedure 17.4 to a settlement conference before a judicial officer other than the assigned trial judge is not personal to the defendant and therefore may be waived by his or her counsel. We affirm Emidi's convictions, but we vacate his sentences and remand for resentencing due to a sentencing error.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        Three police officers responded to an early-morning 9-1-1 call concerning a residential burglary at an apartment complex in Phoenix. When they arrived, the officers noticed that a screen had been pulled back, it had blood on it, and the window was broken. After no one answered their knock on the door, the officers forcibly entered the apartment. Inside a bedroom, they discovered an unclothed woman in severe distress on the floor, speaking on the phone with someone. In the bedroom closet, the officers found Emedi, unclothed from the waist down, clutching a young boy in front of him with his arm around the boy's chest. The officers separated Emedi and the child, handcuffed Emedi, and removed him from the apartment.

**¶3**        As an officer questioned Emedi, he ran and hid under a nearby car. Officers eventually found him and took him to the police station. Police gathered DNA samples from the woman and Emedi. Testing indicated Emedi's DNA on the woman's genitals and the woman's DNA on Emedi's penis. The State charged Emedi with two counts of sexual assault (Count 1 and Count 2); two counts of kidnapping (Count 3 (the woman) and Count 4 (the boy)); one count of second-degree burglary (Count 5); and one misdemeanor count for failure to obey a police officer (Count 6).

**¶4**        At a trial management conference shortly before the trial, the State and Emedi's counsel requested the court schedule a settlement conference. They also suggested they were willing to "waiv[e] the conflict" and move forward with a settlement conference that day before the

---

[1]        We view the facts in the light most favorable to upholding the verdicts. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

assigned trial judge. After a break, the court specifically asked Emedi's counsel, "[D]o you wish to proceed with the settlement conference?" Emedi's counsel responded, "I do, Judge, and I would waive any potential conflict."

¶5         The judge then stepped down from the bench, and the settlement conference proceeded with the judge, the prosecutor, Emedi, and his counsel. The parties discussed with the judge (1) the case, including the evidence available to the State and the arguments that could be made concerning sentencing aggravators; (2) the State's plea offer; and (3) the possible sentence Emedi faced if convicted at trial. At the end of the discussion, Emedi's counsel said that Emedi wanted more time to consider the offer, and the parties agreed to discuss the matter at a later hearing. Emedi ultimately rejected the plea offer, and the same judge who conducted the settlement conference presided over his trial and sentencing.

¶6         After an eight-day trial, the jury acquitted Emedi on Count 1 but found him guilty on the remaining charges. During the aggravation phase, the jury found the State had proven a specifically enumerated statutory aggravating factor and an additional "catch-all" factor, A.R.S. § 13-701(D)(27), for each of Emedi's convictions except Counts 4 and 6. For Count 4, the jury found that the State had proven only two catch-all aggravating factors. On Count 6, the misdemeanor conviction, the aggravating factors did not play a part in establishing the sentencing range.

¶7         For Counts 2, 3, and 6, the court sentenced Emedi to concurrent terms of imprisonment totaling nine years. For Count 4, the court sentenced Emedi to a slightly aggravated term of seven years' imprisonment to be served consecutively to the sentences imposed for Counts 2, 3, and 6. For Count 5, the court suspended the imposition of a sentence and placed Emedi on a five-year term of supervised probation to be served upon his discharge from prison. Emedi appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### A.   Emedi is Bound by His Counsel's Waiver of the Right to a Settlement Conference Before a Judicial Officer Other than the Assigned Trial Judge.

¶8         Emedi argues that Arizona Rule of Criminal Procedure 17.4(a)(2), which provides that an assigned trial judge may participate in settlement discussions only "if the parties consent," required the court to make a record of his "knowing and voluntary" waiver of "his right to not

have a trial judge be the same jurist who conducted the settlement conference." In support of this argument, Emedi contends: (1) this court's decision in *State v. Mendoza*, 248 Ariz. 6 (App. 2019), established that a record of a knowing and voluntary waiver is required; (2) the language of the rule should be interpreted to require a defendant to personally waive the right to a settlement conference before a judicial officer other than the assigned trial judge; and (3) the nature of the right renders it personal to the defendant. Emedi requests that we remand to the superior court "for an examination of the extended record to determine whether [he] understood the right that was . . . waived through his counsel's statement to the court, and whether [he] acquiesced in it." Because Emedi failed to raise this issue before the superior court, we apply fundamental-error review, and Emedi bears the burden to prove fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12, 21 (2018).

**¶9** At the outset, the State contends that we need not address Emedi's arguments concerning Rule 17.4(a)(2) because the discussion held at the trial management conference was an attempt to comply with *State v. Donald*, 198 Ariz. 406, 418, ¶ 46 (App. 2000), not a settlement conference. *See Mendoza*, 248 Ariz. at 16–17, ¶ 18 (holding that *Donald* hearings are exempt from the requirements of the rules governing settlement conferences). Although we agree that the content of the discussion among the assigned trial judge, the prosecutor, Emedi, and his counsel closely paralleled a *Donald* hearing, the fact remains that the assigned trial judge *and the parties* described it as a settlement conference and treated it as one. We see no basis to treat it differently.

### 1. Neither *State v. Mendoza* Nor the Plain Language of Rule 17.4(a)(2) Requires a Defendant's Personal Waiver.

**¶10** Turning first to Emedi's arguments concerning *Mendoza*, we reject the assertion that it controls the outcome here. In that case, the assigned trial judge presided over an ad hoc settlement conference without first soliciting the defendant's consent. On appeal, this court considered whether that gave rise to a presumption of judicial vindictiveness in the ensuing trial. *Mendoza*, 248 Ariz. at 11, ¶ 1. *Mendoza* first considered the scope of Rule 17.4(a)(2), *id.* at 14–17, ¶¶ 12–18, and adopted a multi-factor, totality-of-the-circumstances test for assessing claims of judicial vindictiveness arising from a judge's impermissible participation in settlement negotiations. *Id.* at 18–20, ¶¶ 26–31. Based on the record provided, *Mendoza* then concluded the assigned trial judge's statements during the discussions raised a presumption of judicial vindictiveness that

constituted fundamental error and could not be rebutted by the State. *Id.* at 20–21, ¶¶ 32–35, 22, ¶¶ 38–40.

**¶11** *Mendoza* did not concern whether a defendant's right under Rule 17.4(a)(2) to a settlement conference before a judicial officer other than the assigned trial judge was personal to the defendant. Nor did it analyze whether the trial judge must make an affirmative record of a waiver of that right by the defendant himself. Indeed, the *Mendoza* court explicitly found that neither the defendant nor his counsel had consented to the assigned trial judge's participation in settlement discussions. 248 Ariz. at 16, ¶ 17.

**¶12** We also reject Emedi's argument that the phrase "the parties" in Rule 17.4(a)(2) mandates a personal waiver because it refers to the defendant personally rather than the defendant and his or her counsel collectively. We review the interpretation of court rules *de novo*. *Mendoza*, 248 Ariz. at 14, ¶ 12. "If a rule's language is plain and unambiguous, we apply it as written without further analysis." *Id.* (quoting *State v. Salazar-Mercado*, 234 Ariz. 590, 592, ¶ 4 (2014)). "In determining the plain meaning of a specific provision, we read its words in context and 'look to the [rule] as a whole.'" *Id.* (alteration in original) (quoting *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017)).

**¶13** The Rules define "the defendant" as including "the attorney who represents the defendant" within the "context of certain rules" and further define the "parties" as "the State of Arizona and the defendants in a case." Ariz. R. Crim. P. 1.4(a), (d). The first sentence of Rule 17.4(a)(2) states that the court may order "*counsel* with settlement authority to participate in good faith discussions." The Rule's second sentence states that the assigned trial judge "may participate in this discussion only if the *parties* consent." (Emphasis added.) Reading these sentences together with the definitions in Rules 1.4(a) and (d), the term "parties" in Rule 17.4(a)(2)'s second sentence refers to the State, the defendant, and their respective counsel with settlement authority.

**¶14** This interpretation is reinforced by other provisions within Rule 17.4, which use the term "the defendant" when describing actions personal to the defendant. *See, e.g.*, Ariz. R. Crim. P. 17.4(b) (plea agreement "must be in writing and be signed by the defendant, defense counsel (if any), and the prosecutor."); Ariz. R. Crim. P. 17.4(c) ("Before accepting the plea agreement, the court must address the defendant and confirm . . . that the defendant understands and agrees to the terms."). And by construing "parties" to include the defendant and his or her counsel collectively, we can harmonize Rule 17.4(a)(2) with Rule 17 and the other Rules, which

explicitly describe the defendant's rights as personal when they are intended to be so. *See, e.g.*, Ariz. R. Crim. P. 17.1(a)(2) ("[A] court may accept a plea only if the defendant makes it personally in open court."); Ariz. R. Crim. P. 17.2(a) ("[B]efore accepting a plea of guilty or no contest, the court must address the defendant personally[.]"); Ariz. R. Crim. P. 18.1(b)(2) ("Before accepting a defendant's waiver of a jury trial, the court must address the defendant personally[.]"). Thus, Rule 17.4(a)(2)'s requirement that the "parties" consent to the assigned trial judge's participation in a settlement conference is not personal to the defendant.

> **2.      The Right to a Settlement Conference Before a Judicial Officer Other than the Assigned Trial Judge is Not So Fundamental that It Can Be Waived Only by the Defendant.**

**¶15**      Even though the Rule may not require a personal waiver, some identifiable rights may require a personal waiver to ensure compliance with Due Process. Therefore, our inquiry does not end at our decision in *Mendoza* or the language of Rule 17.4(a)(2).

**¶16**      A defendant is ordinarily bound by his or her counsel's actions concerning the conduct of a trial. *State v. Rodriquez*, 126 Ariz. 28, 33-35 (1980); *State v. Smith*, 197 Ariz. 333, 337, ¶ 11 (App. 1999), *abrogated on other grounds by State v. Soliz*, 223 Ariz. 116, 120, ¶ 17 (2009). This rule typically applies even to the waiver of protected constitutional rights. *Rodriquez*, 126 Ariz. at 34 (citing *Henry v. Mississippi*, 379 U.S. 443, 451–52 (1965)); *Smith*, 197 Ariz. at 337, ¶ 11. This rule is rooted in the nature of the attorney-client relationship and the efficient administration of justice. *Rodriguez*, 126 Ariz. at 34 (quoting *Lanier v. State*, 486 P.2d 981, 986–87 (Alaska 1971)).

**¶17**      But the rule is not absolute and does not apply when a tactical decision by counsel presents "exceptional circumstances." *Smith*, 197 Ariz. at 337, ¶ 11. Exceptional circumstances implicate "such inherently fundamental rights that they 'can be waived only by the defendant and not by his attorney.'" *Id.* at 338, ¶ 14 (quoting *Winters v. Cook*, 489 F.2d 174, 179 (5th Cir. 1973)). The focus on the nature of the right waived aligns with federal analysis on this subject:

> What suffices for waiver depends on the nature of the right at issue. [W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at

stake. For certain fundamental rights, the defendant must personally make an informed waiver. For other rights, however, waiver may be effected by action of counsel. . . . As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*New York v. Hill*, 528 U.S. 110, 114 (2000) (quotations and citations omitted).

**¶18**      Courts recognize that certain specified rights—for example, the right to counsel, enter a guilty plea, a jury trial, and pursue an appeal—are personal to the defendant. *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938) (counsel); *State v. Moody*, 192 Ariz. 505, 509 (1998) (counsel); *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969) (decision to plead guilty); *State v. Hamilton*, 142 Ariz. 91, 94, n.3 (1984) (decision to plead guilty); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (right to appeal). Many other rights, however, may be waived by counsel, including the right to (1) pursue particular arguments at trial; (2) raise evidentiary objections; (3) call witnesses other than the defendant; (4) enter stipulations regarding the admission of evidence; (5) be present at various stages of criminal proceedings; (6) waive speedy trial rights; and (7) consent to a non-Article III judge's supervision of *voir dire*. *Hill*, 528 U.S. at 115 (citing cases for the rights to pursue arguments, raise evidentiary objections, and enter stipulations regarding evidence); *State v. Guyton*, 192 Ariz. 514, 522, ¶¶ 26-27 (App. 1998) (right to be present); *Hill*, 528 U.S. at 115–16 (waiver of speedy trial rights); *Gonzalez v. United States*, 553 U.S. 242, 249–50 (2008) (right to allow magistrate judge to preside over *voir dire*).

**¶19**      Emedi contends the right to a settlement conference before a judicial officer other than the assigned trial judge under Rule 17.4(a)(2) is personal to the defendant because it effectuates the due-process right to an impartial trial judge. We disagree and conclude that the right to a different settlement-conference judicial officer more appropriately fits among the rights that counsel may waive on behalf of the defendant.

**¶20**      A personal, on-the-record waiver by the defendant is reserved for those rights so essential to the "constitutional model of a fair trial" that a personal waiver is the only adequate means to ensure the defendant has not been deprived of one of the structural guarantees of our trial system. *Schneckloth v. Bustamonte*, 412 U.S. 218, 241 (1973) ("The Constitution requires that every effort be made to see to it that a defendant in a criminal case has not unknowingly relinquished the basic protections

that the Framers thought indispensable to a fair trial."). The procedural right to have a judicial officer other than the assigned trial judge preside over a settlement conference does not fall within that class of rights. To be sure, the due-process right to a fair trial under both the Arizona and United States Constitutions guarantees defendants a trial judge free of bias or partiality. *State v. Mincey*, 141 Ariz. 425, 442 (1984). But Rule 17.4(a)(2), like its federal counterpart, Federal Rule of Criminal Procedure 11(c), is a prophylactic measure adopted to help safeguard the impartiality of a trial judge and is not "impelled by the Due Process Clause or any other constitutional requirement." *United States v. Davila*, 569 U.S. 597, 611 (2013).

**¶21** As a result, the waiver or breach of this safeguard does not, in and of itself, cast doubt on the constitutional assurance of an impartial trial judge to the extent necessary to require a broad rule of personal waiver. *Compare Schneckloth*, 412 U.S. at 241 (recognizing that lack of right to counsel alone creates "the real and substantial danger" that defendant's lack of legal experience may result in his or her conviction), *with Davila*, 569 U.S. at 611 (whether breach of prohibition on judicial participation in plea negotiations resulting in guilty plea deprived defendant of constitutional right to elect trial by jury depends on the circumstances of each case), *and Mendoza*, 248 Ariz. at 19–20, ¶¶ 27–31 (adopting multi-factor test to determine whether assigned trial judge's improper participation in settlement conference raised possibility of judicial vindictiveness in sentencing).

**¶22** Accordingly, a defendant's right to choose to have a judicial officer other than the trial judge oversee the settlement conference is among the many tactical decisions that counsel may make on behalf of the defendant. *Cf. Gonzalez*, 553 U.S. at 250. Decisions concerning the conduct of plea negotiations are strategic, and the choice of tactics used to achieve a chosen strategy "should be made by defense counsel, after consultation with the client where feasible and appropriate." ABA Standards for Crim. Just. 4-5.2 (4th ed. 2015); *see also Premo v. Moore*, 562 U.S. 115, 124 (2011) ("Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."). As this court outlined in *Mendoza*, a settlement conference permits judges to "engage in a candid dialogue with the parties concerning any topic useful to facilitating settlement." 248 Ariz. at 21, ¶ 37. Both the assigned trial judge's approach to settlement conferences and the persuasive impact of the judge's status as a trial judge are relevant strategic factors that may inform defense counsel's decision whether to consent to a particular judge's participation.

¶23    Further, as with the other tactical decisions described above, "requiring personal, on-the-record approval from the client could necessitate a lengthy explanation the client might not understand at the moment and might distract from more pressing matters as the attorney seeks to prepare the best defense." *Gonzalez*, 553 U.S. at 250; *see also Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("The adversary process could not function effectively if every tactical decision required client approval."); *Rodriquez*, 126 Ariz. at 33–35.

¶24    We conclude that counsel's consent is sufficient to permit the assigned trial judge to participate in a settlement conference under Rule 17.4(a)(2). We find no error, let alone fundamental, prejudicial error, in the court's reliance on defense counsel's unequivocal waiver of the right to a settlement conference before a judicial officer other than the assigned trial judge.

## B.    The Court Committed Fundamental Error by Increasing Emedi's Sentence for Count 4 Beyond the Statutory Maximum Permitted by Law.

¶25    In our review of the record, we discovered a sentencing error concerning the aggravated seven-year term of imprisonment imposed for Count 4. "Although we do not search the record for fundamental error, we will not ignore it when we find it." *State v. Fernandez*, 216 Ariz. 545, 554, ¶ 32 (App. 2007). "Imposition of an illegal sentence constitutes fundamental error." *State v. Watson*, 248 Ariz. 208, 214, ¶ 17 (App. 2020) (quoting *State v. Thues*, 203 Ariz. 339, 340, ¶ 4 (App. 2007)).

¶26    "Under Arizona's sentencing scheme, once a jury implicitly or explicitly finds one aggravating factor, a defendant is exposed to a sentencing range that extends to the maximum punishment available under [Arizona law]." *State v. Martinez*, 210 Ariz. 578, 584, ¶ 21 (2005); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Section 13-701(D) lists twenty-seven aggravating factors that the court may use to increase a defendant's sentence and includes a catch-all category described as "[a]ny other factor that the state alleges is relevant to . . . the nature or circumstances of the crime." A.R.S. § 13-701(D)(27). But our supreme court has constrained a superior court's power to impose an aggravated sentence based solely on a catch-all factor:

Use of the catch-all as the sole factor to increase a defendant's statutory maximum sentence violates due process because it gives the sentencing court virtually unlimited post hoc discretion to determine whether the defendant's prior conduct is the functional equivalent of an element of the aggravated offense.

*State v. Schmidt*, 220 Ariz. 563, 566, ¶ 10 (2009). Thus, a court cannot aggravate a defendant's sentence beyond the presumptive sentence based solely on aggravating factors that fall within the catch-all category. *Id.* at 566, ¶ 12; *see also State v. Dunbar*, 249 Ariz. 37, 51, ¶ 41 (App. 2020).

**¶27** Here, the jury found the State proved only two aggravating factors concerning Count 4: (1) the victim was young, and (2) the offense involved multiple victims in a single incident. The jury found the State had not proved two other alleged factors, including that the kidnapping charge was a dangerous crime against a child. The factors found by the jury are not explicitly enumerated in A.R.S. § 13-701(D), although they have been recognized under the catch-all category. *See State v. Allen*, 248 Ariz. 352, 368, ¶¶ 64–65 (2020) (noting victim's young age is not a specific aggravator under A.R.S. § 13-701(D) but may be used under the catch-all category); *State v. Tschilar*, 200 Ariz. 427, 435, ¶ 33 (same for the number of victims). Because the jury found no enumerated aggravating factors, the maximum potential sentence Emedi faced for Count 4 (a class two felony) was the presumptive sentence of five years under the relevant statute, A.R.S.

§ 13-702(D), and the court erred by imposing an aggravated, seven-year prison term for that count.[2]

¶28    Because we cannot determine how the superior court would have sentenced Emedi had it been aware of the correct maximum potential sentence on Count 4, we remand for resentencing on Emedi's other convictions. *See State v. Garza*, 192 Ariz. 171, 176, ¶ 17 (1998) ("Even when the sentence imposed is within the trial judge's authority, if the record is unclear whether the judge knew he had discretion to act otherwise, the case

---

[2]    We note one further issue concerning Count 4 that merits discussion. Prior to the aggravation phase of the trial, the parties discussed how and to what extent the jury would determine whether Count 4 was a dangerous crime against children ("DCAC"). *See* A.R.S. § 13-1304(B) (kidnapping punishable under the DCAC statute when committed against a child under the age of 15); A.R.S. § 13-705. Over the State's objection, the court granted Emedi's request for an instruction requiring the jury to find beyond a reasonable doubt whether his conduct was "focused on, directed against, aimed at, or target[ing] a victim under the age of fifteen." *State v. Williams*, 175 Ariz. 98, 103 (1993). The jury thereafter found the State had not proven that Emedi met this component of the DCAC statute. However, the jury did not need to decide that issue during the aggravation phase because that element was implicit in the verdict for Count 4. *State v. Larin*, 233 Ariz. 202, 213, ¶ 41 (App. 2013) (sentence enhancement may be inherent in the verdict). In finding Emedi guilty of knowingly restraining the victim with the intent to aid in the commission of a felony, the jury necessarily also found that Emedi targeted the victim. *See Williams*, 175 Ariz at 104 ("It is impossible to imagine how . . . kidnapping . . . could be committed without targeting persons."). Regarding the victim's age, Emedi admitted that he did not contest whether the victim was under the age of 15 at the time of the offense.

Thus, the jury's aggravation-phase verdict is inconsistent with the implicit findings within the trial verdict concerning Count 4 and the undisputed facts of the case. However, Arizona does not require the jury to be consistent regarding the issues brought before it. *See State v. Zakhar*, 105 Ariz. 31, 32–33 (1969).

should be remanded for resentencing."). Accordingly, we vacate Emedi's sentences and remand for resentencing.[3]

**CONCLUSION**

**¶29** We affirm Emedi's convictions but vacate his sentences and remand for resentencing.



AMY M. WOOD • Clerk of the Court
FILED: HB

---

[3] The superior court also erred by requiring Emedi to pay for his DNA testing under A.R.S. § 13-610 as a condition of the probation term imposed for Count 5. "[B]ecause [A.R.S.] § 13-610 does not require a convicted defendant to be assessed the cost of his DNA testing," there is no basis for a court to impose such a provision in a sentencing order. *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14 (App. 2013).